## The People v. Virginia Doyle.

*Evidence: Competency: Relevancy: Criminal intent.* In determining the admissibility of evidence, it is indispensable to consider the object for which it is produced, and the point intended to be established by it; and though evidence offered may have a tendency to prove a fact inadmissible, or irrelevant under the issue, it cannot be excluded for that reason, if its tendency be also to prove a fact which is within the issue, or has been made relevant by the course of the examination.

Whether, on the trial of an information for an intent to kill by poisoning, it be competent to prove a recent attempt to poison, or who prepared food

THE PEOPLE *v.* DOYLE.

a few days prior to the attempt laid in the information, by which the same person was made ill, for the purpose of showing the criminal intent charged;—*Quære?*

Heard July 7.    Decided July 12.

Exceptions certified from the Recorder's Court of the city of Detroit.

Virginia Doyle was charged on the information before the Recorder's Court of the city of Detroit, with the offense of mingling poison (arsenic) with port wine, on the 23d day of February, A. D. 1870, with intent to kill one Catherine DeBaptiste. She was convicted, and a bill of exceptions settled and certified to this Court, under the statute.

Upon the trial, one George Taliaffero was called as a witness, and he having given evidence tending to show that on the 23d day of February, A. D. 1870, the defendant had mingled poison with some wine which his grandmother, Mrs. Catherine DeBaptiste, drank, and that said grandmother was ill after drinking said wine, was asked by counsel for the People whether his grandmother was ill, a few days previous to the 23d, from eating mush. To this question the defendant's counsel objected on the ground that the prosecution could not prove any other offense different from that alleged in the information, or any previous acts, whereupon the question was withdrawn.

Upon cross-examination by the counsel for the prisoner, he testified that he did not know that his father left him any property. Upon further cross-examination, in response to a direct question, he testified that he was the only surviving child of the prisoner, that he had lived with his said grandmother nearly all his life, that his father (the first husband of the prisoner) was dead, and left a lot on Beaubien street, which went to him after his mother's death, and another lot which went to his mother (the pris-

oner) after his grandmother's death, and then, after his mother's death, to him, and that his said grandmother had been ill since the Friday night before the said 23d day of February, and that his said grandmother had, upon said previous Friday night, eaten of some mush which he thought was poisoned, and had also partaken of some beef tea and gruel, prepared by the boys, and was ill after eating of each of said articles, administered at two different times before said 23d.

He was then re-examined by the counsel for the People, and asked this question: "Who made the mush your grandmother ate that Friday night?" To which question counsel for the prisoner objected as immaterial and irrelevant to the issue, and as tending to prove another and distinct offense. The Court overruled the objection, and admitted the evidence. To which ruling counsel for the prisoner excepted. The witness then answered: "My mother made it."

Counsel for the People then called Mrs. Catherine De Baptiste, who, having given evidence tending to show that the prisoner's conduct to her upon the night of the 23d, after she took the alleged poisoned wine, was strange, and her treatment of her unaccountable, was cross-examined relative to her feelings towards the prisoner, and then, upon re-examination, was asked by counsel for the people this question: "What was the treatment of the boys (Ellis and George) to you during this time?" To which question counsel for the prisoner objected as immaterial and incompetent. The Court overruled the objection, and admitted the question. To which ruling, counsel for prisoner excepted. The witness then answered: "They were as kind as they could be."

*H. M. & W. E. Cheever*, for defendant.

I. The general rule, that the evidence should be con-

fined to the issue, should be enforced strictly in a criminal case.—*1 Bishop on Crim. Pro.,* § *490 ; U. S. v. Mitchell, 2 Dall., 348 ; 1 Phil. Ev., 178 ; Barton v. State, 18 Ohio, 221 ; Rex v. Butler, 2 C. & K., 221 ; Farrer v. State, 2 Ohio St., 54 ; People v. Lightfoot, 16 Mich., 511.*

The consequence of placing before the jury facts tending to prove another offense is to raise a presumption of guilt as to the offense for which the prisoner *is* on trial, and secure a conviction by irrelevant testimony.—*Foster, 245 ; 3 Minn., 262.* See also *Birdeye's case, 4 C. & P., 386.*

This case can hardly come under that exception to this general rule, which admits evidence of other transactions, which, by reason of the *time* of their commission, are a part of the offense charged. There was no such connection between the two offenses (if the first was an offense) that proving the one tended legally to prove the other. It might tend to show moral turpitude in the prisoner, but it was not legal evidence. Its effect was necessarily to prejudice the mind of the jury.

II. The kindness of other parties to the person whose life the prisoner was charged with attempting to take, was entirely *irrelevant* to the issue. Its only tendency was, by *contrast,* to prejudice the jury against her. If it had such a tendency it ought to have been excluded.

*Dwight May, Attorney General,* for the People.

I. There was no error in permitting the question —" Who made the mush your grandmother ate that Friday night?"—to be answered. The object of the cross-examination is apparent. It was to raise a presumtion that " the boys " poisoned the mush, and not the defendant; and it was certainly competent to show by the same witness that the defendant prepared the mush.

It appears from the record that this subject was called out on cross-examination, and the People had the right to repel, by the witness, any presumption arising from such examination, that other parties administered the poison.

II. Intimately connected with the last exception, is the second and only other error alleged. It seems to have been a part of the defense to attempt to show that the boys (Ellis and George) had something to do with the poisoning of Mrs. DeBaptiste, and to rebut any such presumption she was asked, "What was the treatment of the boys (Ellis and George) to you during this time?" This was clearly competent. It grew directly out of the defense, and the answer of the witness that "They were as kind as they could be" was admissible to go to the jury to show the relation between herself and the boys.

In any view that may be taken of the question, it is difficult to see how any injury could possibly result to the defendant if she was innocent of the crime charged.

III. The record does not pretend to give even a synopsis of the testimony in the case; it only pretends to give so much of it as to show how the questions arose. The exceptions found in the record being untenable, the presumption is that there was sufficient evidence in the case to warrant the conviction.

GRAVES, J.

The defendant was tried in the Recorder's Court of Detroit upon an information charging her with having on the 23d day of February, 1870, mingled poison with wine with intent to kill one Catherine DeBaptiste. The jury having returned a verdict of guilty against the defendant, she alleged exceptions, which being allowed, have been duly certified to this Court before judgment. The case presents

but two questions, and they arise upon the admission of certain evidence against the objection of defendant.

One George Taliaffero, a grandson of Mrs. DeBaptiste, having given evidence on the part of the People tending to show that his mother, the defendant, had mingled poison with wine which his grandmother, Mrs. DeBaptiste, drank on the 23d day of February, 1870, and that the latter was ill after drinking the wine, was asked by the prosecuting attorney whether his grandmother was ill a few days previous to the 23d from eating mush. But this being objected to by defendant's counsel, on the ground, as stated, that the People could not prove any other offense distinct from that charged, or any previous acts, the question was withdrawn. The witness, being then cross-examined by the prisoner's counsel, testified that he did not know that his father left him any property, and further, that he, the witness, was the only surviving child of the prisoner; that he had lived with Mrs. DeBaptiste, his grandmother, nearly all his life; that his father, the first husband of the prisoner, was dead, and left a lot on Beaubien street which went to him after his mother's death, and another lot which went to his mother, the prisoner, after his grandmother's death, and then, after his mother's death, to him; and that his said grandmother had been ill since the Friday night before the said 23d day of February; that his said grandmother had upon the Friday night before mentioned eaten of some mush which he thought was poisoned, and had also partaken of some beef tea and gruel, prepared by the boys, and was ill after eating of each of such articles administered at two different times before said 23d of February. The witness, being then re-examined by the prosecuting attorney, was asked this question: "Who made the mush your grandmother ate that Friday night?" when the prisoner's counsel objected to the question as immaterial and irrelevant, and also as calling for testimony

tending to prove another and distinct offense. The objection was overruled and the witness answered, " My mother made it."

It is urged on behalf of the prisoner that this evidence tended to prove the commission of another offense, and was therefore inadmissible, and that the previous testimony of the witness on cross-examination as to the illness of Mrs. DeBaptiste on the Friday mentioned, and the cause of that illness, could not justify its introduction, since the testimony drawn out by the cross-examination as to the mush had no tendency to connect the prisoner with the making or giving of it. Whenever a question is made upon the admission of evidence it is indispensable to consider the object for which it is produced, and the point intended to be established by it. For unless this precaution is observed, a piece of evidence clearly admissible under the view and in reference to the circumstances in which it is offered, may be disallowed upon an irrelevant objection. It frequently happens that an item of proof is plainly relevant and proper for one purpose, while wholly inadmissible for another, which it would naturally tend to establish. And when this occurs, the evidence when offered for the legal purpose can no more be excluded on the ground of its aptitude to show the unauthorized fact, than its admission to prove such unauthorized fact can be justified on the ground of its aptness to prove another fact legally provable under the issue. While we desire not to be understood as admitting that it was incompetent for the People to give evidence of a prior attempt by the prisoner a short time before that charged in the information and of the same nature, as bearing upon the question of intent, we find no occasion in the present case to consider that question, since we think it quite apparent that the testimony objected to was offered and received for a very different purpose.

The prosecuting attorney on the direct examination inquired of the witness as to the previous illness of Mrs. DeBaptiste, but withdrew the question upon the objection of the prisoner's counsel. But the course of the cross-examination of the same witness upon this subject, and upon other facts, had a tendency to raise an inference that the poisoning was perpetrated by this witness and an associate mentioned, and not by the prisoner. And it was certainly competent for the People, upon re-examination of the same witness in relation to the same matters, to call out anything omitted by the cross-examination, and not objectionable in point of form, which would be calculated to exclude such inference.

The obvious purpose of the inquiry on re-examination, as to who prepared the mush which the old lady ate on Friday, was simply to clear up that subject, and to enable the jury to estimate correctly the facts drawn out upon cross-examination.

We think this was entirely proper, and that the objection taken was inapplicable under the circumstances.

Mrs. DeBaptiste having given evidence for the People tending to show that the prisoner's conduct towards her after the wine was taken on the evening of Friday, was strange and unaccountable, and having testified on cross-examination as to her feelings towards the prisoner, was allowed on re-examination to state, under objection, that the witness, Taliaffero, and his associate before referred to " were as kind as could be " to her during the transaction, and this presents the remaining question in the case.

It is claimed that this was entirely irrelevant and tended to prejudice the prisoner by contrasting her deportment towards the old lady with that of other parties.

We think, however, that this testimony was clearly relevant. We have already alluded to the course of the

defense, as calculated to induce an impression that the act charged upon the prisoner might have been done by these parties, and in reference to that, it was competent to show by the old lady herself, that their behavior and relations to her were amicable and kind.

The exceptions are overruled, and the Recorder's Court will proceed to award judgment upon the verdict.

The other Justices concurred.