AMES *v.* MacPHAIL.

1. Appeal and Error—Assignments of Error—Briefs—Waiver.
   Assignments of error which are not discussed in the briefs are deemed waived.

2. Limitation of Actions—Partnership—Payments on Notes—Evidence.

In action on notes that had been executed by a partnership, in which it was disputed whether or not the partnership had been dissolved and whether there had been novation, indorsements on back of notes which constituted evidence of payments binding upon defendant partner as waiver of the statute of limitations if partnership had not been dissolved would be admissible (3 Comp. Laws 1929, § 13976).

3. Partnership—Payments on Notes—Indorsements—Evidence—Statute of Limitations.

Instruction that, standing alone, indorsements of payments on notes on which payee sued defendant as partnership maker were not sufficient proof of payment and that, even if they were found to be payments, they were not binding on defendant unless made by partnership before dissolution *held*, proper where defendant claimed partnership had been dissolved and that as to him statute of limitations had run its course (3 Comp. Laws 1929, § 13976).

4. Same—Dissolution—Payments on Notes—Evidence.

Testimony of wife of deceased partner whom defendant claimed had assumed liability on the partnership obligations, relative to payments indorsed on notes *held*, not inadmissible because hearsay where it bore on question of whether or not payments were made for the partnership and whether or not partnership was dissolved and indorsements were admitted only as evidence that payments had been made on the notes.

5. Same—Dissolution—Evidence.

Testimony as to negotiations for oil leases by partners in mercantile business both before and after alleged oral dissolution *held*, admissible on issue of dissolution in action against defendant as maker of partnership note, where certificate of partnership filed with county clerk did not limit scope of partnership and such testimony tended to show the partnership business was continued after alleged dissolution.

6. Evidence—Purpose—Introduction.

Since the end and purpose of testimony in legal proceedings is to arrive at the truth of the issues between the parties, the tendency of the courts is to permit the introduction of any testimony which will tend to throw light upon the merits and aid in a correct solution of the issues involved in the controversy.

7. PARTNERSHIP—FINANCIAL CONDITION—EVIDENCE—REBUTTAL,—COR-
ROBORATION.

In action on notes given by partnership in which defendant inter-
posed as defense that partnership had been dissolved, a nova-
tion had been effected, and that other partner, now deceased,
had assumed liability on the notes, testimony as to the financial
status of the partnership *held*, admissible where part of it was
admissible because of prior statements of defendant's witnesses
concerning similar matters and remainder substantiated testi-
mony of plaintiff's witness, the deceased partner's widow, that
it was not intended that defendant be released from all the
debts because of the poor financial status of the firm.

8. SAME—ISSUES OF FACT—EVIDENCE—DIRECTED VERDICT.

In action on partnership notes against partner who claimed
deceased partner had assumed all liability upon dissolution
of the partnership and that there had been a novation effected,
where there was testimony that the partnership had not been
dissolved, that deceased had not assumed all remaining debts,
that defendant had signed partnership obligations subsequent
to alleged dissolution, that no notices of dissolution had been
given to creditors, no change made in records of the county
clerk, and that payments had been made which, if defendant
were a partner, would keep notes in force as to him, which
testimony raised issues of fact on issues of novation, dissolu-
tion, assumption of liability, and statute of limitations, di-
rected verdict for defendant was properly refused (3 Comp.
Laws 1929, § 13976).

9. TRIAL—DIRECTED VERDICT—EVIDENCE.

A verdict cannot be directed if the testimony presents issues
of fact.

10. SAME—INSTRUCTIONS—PARTNERSHIP NOTES—DEFENSES.

In action on partnership notes in which defendant interposed
defenses of novation, dissolution of partnership, assumption
of liability by other partner, now deceased, and statute of
limitations, charge to jury, when construed in light most
favorable to defendant-appellant, *held*, fair, impartial, not
misleading or confusing, and without error (3 Comp. Laws
1929, § 13976).

11. SAME—CREDIBILITY OF WITNESSES—WEIGHT OF TESTIMONY.

It is the function of a jury to determine the credibility of wit-
nesses and the weight which shall be given to the testimony
presented.

12. APPEAL AND ERROR—VERDICTS—GREAT WEIGHT OF EVIDENCE.

Verdict for plaintiff in action on notes executed by partnership of which defendant had been a member *held,* not contrary to the great weight of evidence.

13. SAME—PARTNERSHIP—JUDGMENT FOR HALF OF SUM DUE—CREDITS FOR PAYMENTS.

In action on notes executed by partnership in the amount of $9,000 in which jury first brought in a verdict against defendant who was a partner at time notes were executed in the amount of "one-half of the notes and interest due on same" and, upon further instruction, a verdict in the "sum of $4,500" upon which judgment was entered and no claim made on motion for new trial that verdict was excessive or that it did not support the judgment, defendant was not entitled to complain of failure to deduct credit of $444.35 admittedly paid on the notes since he could have been held liable for full amount of obligations.

Appeal from Arenac; Shaffer (John C.), J. Submitted April 6, 1939. (Docket No. 30, Calendar No. 40,415.) Decided June 5, 1939.

Assumpsit by Eliza J. Ames, special administratrix of the estate of Jay Ames, deceased, against Fred MacPhail for sums due on promissory notes. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Yeo & Bilitzke,* for plaintiff.

*Penny & Charter* (*R. J. Crandell,* of counsel), for defendant.

POTTER, J. Suit on promissory notes brought by the administratrix of the estate of Jay Ames, deceased.

September 2, 1919, Clark M. Pomeroy, now deceased, and Fred MacPhail, defendant and appellant herein, purchased a mercantile business from Jay

Ames, giving him therefor a promissory note for $11,400 and a chattel mortgage, as copartners, to secure the payment of the same. Prior to November 1, 1921, the amount of the debt was reduced to $10,000, for which Pomeroy and MacPhail gave ten $1,000 notes. One of these notes was paid. Indorsements of interest payments on the other notes for the years 1922 to 1933 appear on the reverse thereof. The 1933 payment was based upon goods and merchandise purchased by Mr. and Mrs. Ames from the store from July 6, 1932, to October 3, 1933. After 1933, Mrs. Ames continued to trade there and owed Pomeroy & MacPhail $444.35, which amount, it is conceded, should be indorsed on the notes.

Although appellant testified the partnership was formed in 1919, a certificate of copartnership was not filed with the county clerk until January 8, 1925. The partners carried on the business together until May, 1928, when MacPhail was appointed mail carrier and left the store.

The main issue is raised by the testimony as to what arrangements were made at the time MacPhail left the store.

Henry Pomeroy, Clark Pomeroy's older brother, testified that shortly after MacPhail's appointment as mail carrier, Fred MacPhail, Clark Pomeroy, Jay Ames, and Henry Pomeroy met and agreed orally to immediate dissolution of the partnership; possession by Clark Pomeroy of all assets and assumption by him of all liabilities of the partnership; release of MacPhail from all liabilities of the partnership; and, specifically, release of MacPhail from all liability to Ames on the notes in question.

The letterheads, billheads, invoices, and the sign on the store were later changed to "C. M. Pomeroy." Pomeroy took over the sole management of the store business and disposed of some of the stock.

The township supervisor assessed the property to C. M. Pomeroy from then until he (Pomeroy) closed the store in June, 1935. From this, defendant claimed dissolution of the partnership, novation of the obligation on the notes in question, and that the statute of limitations * had run against the notes insofar as MacPhail was concerned.

As opposed to this, Mrs. Clark Pomeroy, who worked in the store, testified she knew of no such agreement, but it was her understanding that she and her husband were to liquidate the assets and Fred MacPhail was to pay a part of the debts they could not pay, and that the business would be carried on under the name C. M. Pomeroy because Mac-Phail, as mail carrier, could not engage in competitive business. There was testimony no certificate of dissolution was filed with the county clerk; creditors were not notified of the change; MacPhail continued to charge merchandise at the store from 1928 to 1935, the account totaling $307.20 in May, 1935; MacPhail executed promissory notes in the partnership name to the International Harvester Company as late as 1930; farm machinery was sold in the name of the partnership as late as October, 1931; the parties continued to take oil leases together subsequent to May, 1928, and the expenses incident to securing these leases were paid out of money from the store; these oil negotiations continued through April 1, 1935; a financial statement was rendered the bank, dated November 20, 1928, in the name of Pomeroy & Mac-Phail; and several persons who were closely associated with the partners in business were not informed the partnership had been dissolved. Plaintiff argued there had been no dissolution and novation, and, since payments of interest on the notes had been made by Pomeroy, they must have been made

* See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—REPORTER.

for the partnership, tolling the statute of limitations as to both partners.

At the close of proofs, defendant moved for a directed verdict. The motion was denied and the cause submitted to a jury, who returned a verdict for plaintiff in the amount of $4,500, plus interest. Defendant moved for a new trial, but the motion was denied. Defendant now appeals, assigning 25 errors, based mainly upon admission of evidence and the charge to the jury. Of these, Nos. 3, 10, 11, 13, 14 and 16 have not been discussed in the briefs and will be deemed waived. *Smith* v. *Michigan Realty & Construction Co.*, 175 Mich. 600; *Ward* v. *Carey*, 200 Mich. 217; *People* v. *Oprita*, 213 Mich. 13; *Johns* v. *Wisconsin Land & Lumber Co.*, 268 Mich. 675; *Bubser* v. *Ranguette*, 269 Mich. 388.

Appellant's assignments Nos. 1 and 2 raise the question that it was error for the trial court to receive in evidence the indorsements on the back of the notes upon which suit is based. In view of the fact that whether or not the partnership had been dissolved and whether there had been novation were disputed questions, and these indorsements would constitute evidence of payments (*Judson* v. *Pratt,* 208 Mich. 286; *Hiscock* v. *Hiscock,* 257 Mich. 16 [78 A. L. R. 953]), which would be binding upon defendant as a waiver of the statute of limitations if the partnership had not been dissolved, this evidence was admissible. The jury was properly instructed that such indorsements, standing alone, were not sufficient proof of payment and that, even if they were found to be payments, they were not binding upon MacPhail unless made by the partnership before dissolution.

Defendant's contention that Mrs. Pomeroy's testimony relative to the indorsements is inadmissible because based upon hearsay is not well founded. It

should be noted that the indorsements were admitted only as evidence that payments had been made on the notes. Whether these payments were made for the partnership and whether Fred MacPhail was at that time still a member of the partnership were questions to be determined by the jury, and the court's charge correctly pointed this out.

Defendant's assignments Nos. 4, 7, 8 and 15 question the court's reception of evidence that the partners negotiated for oil leases both before and after the alleged dissolution; that the expenses of these operations were paid by the store; and that defendant received large sums therefrom. Although these had nothing to do with their general store, they may have been properly carried on as a partnership affair since the certificate of copartnership filed with the county clerk did not limit its scope. This testimony tended to show the partnership business was continued subsequent to May, 1928, contrary to defendant's theory of dissolution, and was relevant.

"The end and purpose of testimony in legal proceedings is to arrive at the truth of the issues between the parties, and the tendency of the courts is to permit the introduction of any testimony which will tend to throw light upon the merits, and aid in a correct solution of the issues involved in the controversy." *Turnbull* v. *Richardson,* 69 Mich. 400.

Assignments Nos. 5, 9 and 12 allege error in the admission of testimony as to the financial status of the partnership. Part of this testimony was admissible because of prior statements of defendant's witnesses concerning similar matters. The remainder of it tends to substantiate Mrs. Pomeroy's testimony that they did not intend to release MacPhail from all obligation, and assume all debts themselves, because of the poor financial status of the firm.

Assignment No. 17 alleges the court erred in refusing to grant defendant's motion for a directed verdict. At the time of the motion, there was before the court the testimony of Mrs. Pomeroy that the partnership was not dissolved in May, 1928, but that it was understood MacPhail would pay his share of the debts; written evidence that MacPhail had signed partnership obligations after May, 1928; testimony of continued oil negotiations after May, 1928, that no notice of dissolution had been given to creditors, that no change had been made in the records of the county clerk as to the existence of the partnership, and that payments had been made on the notes which, if MacPhail was still a member of the partnership, would keep them in force as to him. This raised issues of fact as to the dissolution of the partnership, novation, and the application of the statute of limitations. A verdict cannot be directed if the testimony presents issues of fact. *Burt* v. *Railway Co.*, 262 Mich. 204; *Davis* v. *Belmont Creamery Co.*, 281 Mich. 165.

Assignments Nos. 19 to 23, inclusive, deal with the trial court's charge to the jury. Construing the charge in the light most favorable to appellant's contentions, we find no error therein. The charge was fair and impartial concerning the facts as well as the law involved. It was not misleading or confusing. The court made it clear in several portions of its charge that if the jury found the partnership was terminated or dissolved in May, 1928, as claimed by the defense, payments made thereafter would not be binding upon defendant. Defendant's theory of novation was also presented to the jury in an unbiased manner.

Assignment No. 24 is based upon the court's refusal to grant defendant's motion for a new trial. Defendant advanced the same reasons in support of

this motion as were given to substantiate his motion for a directed verdict, with the addition of the claim the verdict was contrary to the great weight of the evidence. Bearing in mind it is the function of the jury to determine the credibility of witnesses and the weight which shall be given to the testimony presented (*Davis* v. *Belmont Creamery Co., supra*), we cannot say there is a just basis for this assignment.

Appellant's last assignment, No. 25, alleges the verdict does not support the judgment as rendered. The jury first returned a verdict that defendant should "pay one-half of the notes and interest due on same." Upon being instructed that they must find a verdict for a definite sum, the jury retired to deliberate and then returned a verdict "That Mr. MacPhail shall pay the sum of $4,500." Judgment was rendered thereon in the amount of $4,500, plus costs and charges. In his motion for a new trial, defendant did not urge that the verdict was excessive or that it did not support the judgment. Appellant now claims the sum of $444.35, which Mrs. Ames admitted had been paid on the notes, should have been credited. Defendant might, on the partnership obligations, have been held liable for the full amount of the notes, and may not successfully urge here, as ground of reversal, that credit was not given for this sum.

Judgment affirmed, with costs.

Butzel, C. J., and Wiest, Bushnell, Sharpe, Chandler, North, and McAllister, JJ., concurred.