## PEOPLE *v.* BAILEY

### Opinion of the Court

1. Evidence—Admissibility.

    The proper test for the admissibility of evidence is whether it has a tendency to affect belief in the mind of a reasonably cautious person, who should receive and weigh it with judicial fairness.

---

References for Points in Headnotes

[1, 2] 29 Am Jur 2d, Evidence §§ 1, 249.
[3] 29 Am Jur 2d, Evidence §§ 367, 371–373.
[4, 5, 8, 9] 29 Am Jur 2d, Evidence § 251 *et seq.*
[6, 7] 30 Am Jur 2d, Evidence §§ 1170–1172.

2. EVIDENCE—FUNCTION OF JURY—WEIGHT OF EVIDENCE—EXCLUSION OF EVIDENCE.

The jury performs the function of assigning persuasive values to relevant evidentiary matters and the judicial duty of excluding evidence from this jury function should be exercised with great caution.

3. ROBBERY—IDENTIFICATION—ASSOCIATION—ADMISSIBILITY.

Police officer's testimony that defendant had frequently associated with another man was admissible in defendant's trial for robbery where the complainant, who had given a not-so-positive identification of the defendant as one of the five bandits who had robbed her, had positively identified the other man as one of the bandits, because the defendant's and the other man's association before the crime, when considered with the positive identification of the other man, would tend to support the identification of defendant.

DISSENT BY LEVIN, J.

4. CRIMINAL LAW—EVIDENCE—ASSOCIATION—RELEVANCE.

*Defendant's association with a man identified as one of a group that committed a robbery is not evidence relevant to defendant's participation in the robbery where it was expectable that they would have had contacts with each other since they were of the same race, in the same age group, and living in a relatively small town.*

5. CRIMINAL LAW—EVIDENCE—ASSOCIATION—RELEVANCE.

*An 18-year-old defendant's association with a 21-year-old man identified as one of a group that committed a robbery is inadmissible in defendant's trial for participating in the robbery where they were two of less than 600 Negro males between the ages of 15 and 24 in their town of 45,000, and, therefore, it is expectable that they would have contacts with one another.*

6. CRIMINAL LAW—PRESUMPTION OF INNOCENCE—ASSOCIATION.

*A reasonable doubt as to defendant's innocence should not be resolved against him merely because he was friendly with a man positively identified as one of a group that had committed the crime.*

7. CRIMINAL LAW—EVIDENCE—PRESUMPTIONS.

*In a criminal case where the only evidence—other than the objected-to evidence—was the uncertain identification by the*

*victim, it should be assumed that but for the objected-to testimony the defendant would have been found innocent.*

8. CRIMINAL LAW—EVIDENCE—FREEDOM OF ASSOCIATION.

*The fact that defendant had associations with one of a group of men accused of committing a crime should not be provable by itself, and to allow the people to prove that association as some evidence of the likelihood of defendant's participation in the crime would be a dangerous precedent to all who value the right of free association.*

9. CRIMINAL LAW—EVIDENCE—SURVEILLANCE—ADMISSIBILITY.

*Detective's testimony that he was in charge of investigating serious crime and that he had come to know defendant and another accused of the robbery and had seen them together on a number of occasions was improperly admitted since it tended to show that defendant, who did not testify, was under police surveillance and implied that the accused had committed other crimes or had a disposition toward conduct similar to the offense charged.*

Appeal from Muskegon, Charles A. Larnard, J. Submitted Division 3 May 4, 1971, at Grand Rapids. (Docket No. 9802.) Decided October 1, 1971.

Louis Bailey was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Roman T. Plaszczak,* Prosecuting Attorney, for the people.

*Vernon D. Kortering,* for defendant on appeal.

Before: R. B. BURNS, P. J., and HOLBROOK and LEVIN, JJ.

R .B. BURNS, P. J. Louis Bailey appeals from his armed robbery[1] conviction. The defendant's sole

---

[1] MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797).

objection on appeal concerns the trial testimony of a Muskegon police officer. To understand defendant's objection it is necessary to recount the eyewitness testimony of the robbery's victim, *viz.,* a clerk at the Muskegon grocery store in which the robbery occurred.

The clerk identified the defendant at a pretrial lineup and at trial as one of the five armed bandits who robbed the store. The clerk's identification of Bailey at the lineup was somewhat less than positive.[2] The clerk was positive, however, in her identification of one Charles Salis as the person who choked her and dragged her to the rear of the store during the robbery.

Subsequent to the clerk's identification testimony, the police officer testified that Salis and Bailey had frequently associated with each other prior to the robbery. Defendant objects to this "guilt by association"[3] testimony as being immaterial, irrelevant, and prejudicial.

We begin analysis of defendant's testimonial objection by noting and giving respect to the considerable amount of judicial discretion associated with evidentiary admissibility. *People* v. *Charles Williams* (1969), 15 Mich App 683. Supporting his argument of immateriality and irrelevancy, the defendant cites the case of *United States* v. *Smith* (CA 6, 1968), 403 F2d 74. In *Smith,* as in this case, an issue involving testimonial evidence was presented but any further analogy to the *Smith* case is illusory. The objectionable testimony in *Smith*

---

[2] In identifying Bailey as one of the culprits the clerk exclaimed that Bailey "looks like him."

[3] Defendant's reliance on the phrase "guilt by association" is misplaced since it has historically been used in situations where a particular association in itself has been labeled criminal. The phrase has never been applied to matters of evidentiary relevance. See 3 Wharton, Criminal Law and Procedure, § 959, p 106.

came from a prosecution witness who stated that the defendant had "just got out of the penitentiary".[4]

The rule disallowing evidence of former convictions to prove a presently-charged crime is an evidentiary axiom.[5] *People* v. *Matthews* (1969), 17 Mich App 48. See, also, 1 Wharton, Criminal Evidence (12th ed), § 232, pp 492, 493. The testimony to which defendant objects, unlike the *Smith* case, involves evidence of defendant's prior relationship to a man who was positively identified as one of the robbers. Defendant does not rely on any other case to support his contention that such evidence is incompetent. Our own analysis of the law indicates that the general rule gravitates against the defendant's position.[6]

The test of evidentiary relevancy in Michigan was stated by Justice Cooley in *Stewart* v. *People* (1871), 23 Mich 63, 75:

"The proper test for the admissibility of evidence ought to be, we think, whether it has a tendency to affect belief in the mind of a reasonably cautious person, who should receive and weigh it with judicial fairness."[7] See, also, *United States* v. *Craft* (CA 6, 1969), 407 F2d 1065.

Thus, if the proffered testimony of the police officer in this case tends to establish, in the mind of a reasonably cautious person, the proposition that defendant participated in the robbery, then it is

---

[4] *United States* v. *Smith* (CA6, 1968), 403 F2d 74, 75.

[5] Unless such crimes come within the plan, scheme, or design exception. See MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050).

[6] The general rule as stated in 22A CJS, Criminal Law, § 608, pp 415, 416, approves of evidence showing the prior relationship between the accused and an accomplice.

[7] *Cf. People* v. *Lewis* (1933), 264 Mich 83, 88, and *Ames* v. *MacPhail* (1939), 289 Mich 185, 192. The definition of relevancy has varied from state to state but according to one prominent author the Michigan rule is consistent with the most acceptable test. McCormick, Evidence, § 152, p 318, fn 23.

relevant. Such evidence need not be conclusive of the ultimate issue. A single piece of circumstantial evidence rarely proves the ultimate fact. *Whitaker* v. *Shooting Club* (1894), 102 Mich 454. Furthermore, the relevance of a given piece of evidence may in whole or in part depend on the introduction of other competent evidence. 1 Wigmore, Evidence (3d ed), § 28, p 410. See, also, *People* v. *Doyle* (1870), 21 Mich 221, and *People* v. *Lewis* (1933), 264 Mich 83.

The jury performs the function of assigning persuasive values to relevant evidentiary matters, and the judicial duty of excluding evidence from this jury function should be exercised with great caution.

It is clear that identity may be proven by circumstances pointing towards one person.[8] In this case the fact of prior acquaintance between Bailey and Salis would tend to affect the belief of a reasonably cautious person on the question of Bailey's presence at the robbery. Human experience indicates that total strangers are not likely to spontaneously commit a crime together. At least a few minutes of association are necessary to communicate intentions. It is true, of course, that mere association or friendship with a felon does not prove one guilty of committing a crime with him, but it cannot be contradicted that the friend or associate is more likely a suspect than a complete stranger.

In *People* v. *Tucker* (1969), 19 Mich App 320, evidence that defendant's dog was present at the home of the rape victim was certainly less than conclusive on the question of defendant's guilt, yet it was admitted for jury consideration. The probative value of the evidence in *Tucker* and in this case may be

---

[8] *People* v. *Sullivan* (1939), 290 Mich 414; *People* v. *Tucker* (1969), 19 Mich App 320.

slight, but as long as its admission tends to cast a shadow of guilt it must be admitted for the jury's determination as to the extent of that shadow.

The evidence that Bailey and Salis were associates before the crime, when considered along with the positive identification of Salis as one of the robbers, would tend to support the not-so-positive identification of Bailey. Such a tendency renders this testimonial evidence relevant.

The defendant's objection on the ground of "materiality" is without merit since the evidence was introduced to prove a matter in issue.[9]

We cannot perceive of any countervailing policy of why, even though relevant, this evidence should not have been presented for the jury's consideration. See *People* v. *Jordan* (1970), 23 Mich App 375.

Affirmed.

Holbrook, J., concurred.

Levin, J. (*dissenting*). The majority and I are in agreement that it is the function of the court to decide what evidence is admissible—in this case, whether the objected-to evidence was of probative value.

My colleagues write that "the relevance of a given piece of evidence may in whole or in part depend on the introduction of other competent evidence", and that "identity may be proven by circumstances pointing towards one person". I have no quarrel with those general observations.

Their opinion continues: "It is true of course that mere association or friendship with a felon

---

[9] For the technical distinctions between the words "relevant" and "material" see McCormick, Evidence, § 152, p 315, and 4 Callaghan's Michigan Pleading & Practice, § 36.188, p 16.

does not prove one guilty of committing a crime with him, but it cannot be contradicted that the friend or associate is more likely a *suspect* than a complete stranger". (Emphasis supplied.)

They conclude: "The evidence that Bailey and Salis were associates before the crime, when considered along with the positive identification of Salis as one of the robbers, would tend to support the not-so-positive identification of Bailey. *Such a tenency renders this testimonial evidence relevant".* (Emphasis supplied.)

The tendency is, however, far too tenuous to be of probative value. I therefore dissent.

## I.

The defendant, Louis Bailey, was convicted by jury verdict of armed robbery.[1]

The victim, a clerk in a grocery store, testified that five black boys robbed her at gunpoint. Bailey and four other persons charged with the crime were tried together. Four of the defendants, including Bailey, were convicted. Subsequently, Bailey was granted a new trial because of *Bruton* error.[2] This appeal is from Bailey's conviction at his second trial.

At Bailey's second trial, he was tried alone. The victim again testified that Bailey was one of the robbers. She also testified that another of the robbers, Charles Salis, had grabbed and choked her and then dragged her to the rear of the store during the robbery.

A City of Muskegon police detective testified that it was his duty to investigate serious crimes. Over objection, he was permitted to say that he had known

---

[1] MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797).

[2] *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620; 20 L Ed 2d 476).

both Charles Salis and Louis Bailey before August 19, 1969, the date on which the crime was committed, and that they had associated together before that date. He had seen both of them together in crowds on street corners and he had seen them in the area where they lived. They lived within two blocks of each other. In response to the question whether he had seen them chum around together, he responded, "I have seen them together on a number of occasions with other people, yes".

The people's case against Bailey rested entirely on the identification testimony of the victim. The success or failure of Bailey's defense depended on whether he could create a reasonable doubt in the minds of the jurors concerning the accuracy of the victim's identification testimony. Bailey contends that, in allowing the detective to testify concerning Bailey's association with Salis, the trial judge erroneously permitted the jurors to infer guilt by reason of his association with Salis whose conduct was the most aggravated of all the assailants since he had been identified by the victim as the assailant who had grabbed and choked her and dragged her to the rear of the store.

In response the people argue, and the trial judge and the majority agree, that the detective's testimony was of probative value because the jury could properly reason that it was unlikely the victim was mistaken in identifying Bailey if another of the persons she identified was one of his friends.

## II.

To begin with, it is not as improbable as one might hastily conclude that the victim of a crime would mistakenly identify as a participant in the commission of a crime a friend of another person also

identified as a participant. When the 1970 census was taken, there were 44,631 persons living in Muskegon; 6,411 were black.[3] When the crime was committed in August 1969, Salis was 18 years old and Bailey was 21. In 1970, there were 584 black men between the ages of 15 and 24 living in Muskegon.

The record does not show how many of the men in the lineups were acquainted with or friends of Bailey. Perhaps none were. Perhaps no one other than a friend or acquaintance of his was placed in the lineup. If a considerable number of the men in the lineup were Bailey's friends or acquaintances, the probability that the victim would identify a friend or acquaintance of Bailey's is not really that remote.

The probability or improbability of a mistake in identification depends on factors which have nothing to do with coincidences in the backgrounds of the persons identified—whether or not they are friends. It depends on the eyesight, powers of observation, recall, emotional makeup, intelligence, honesty and the like of the identifying witness.

A statistician might be able to determine a probability factor. But until *all* the components are determined empirically, it is impossible to even guesstimate a probability factor. And even if it were determinable, it would only be good for a witness who has the same sensory and emotional profile as does the witness for whom the probability factor was determined.

For a person of faulty eyesight, poor powers of observation, bad recall, unstable emotional makeup —who is as prone to make an identification, correct or faulty, as are some persons to stub their own

---

[3] The statistics stated are taken from the 1970 United States Census of Population.

toes—the probability factor worked out for another person who has a superior sensory or emotional profile would be worthless.

I submit that if the odds are 2, 10, 50, or 100 to 1 that a paragon would pick out two friends, they are 2, 10, 50, or 100 to 1 that an ordinary citizen would mistakenly pick out two friends.

For a penetrating analysis of the weakness and dangers of "probability" proof see Tribe, Trial by Mathematics: Precision and Ritual in the Legal Process, 84 Harv L Rev 1329 (1971). See, also, Anno: Admissibility, In Criminal Case, of Statistical or Mathematical Evidence Offered for Purpose of Showing Probabilities, 36 ALR3d 1194. Cases rejecting such proof include *People* v. *Collins* (1968), 68 Cal 2d 319 (66 Cal Rptr 497, 438 P2d 33); *Smith* v. *Rapid Transit, Inc.* (1945), 317 Mass 469 (58 NE2d 754); *State* v. *Sneed* (1966), 76 NM 349 (414 P2d 858).

Even if we assume, without record evidence, that there were persons in the lineup who were not friends or acquaintances of Bailey and that he was not acquainted or friendly with a sizeable number of the 584 black men of his age level living in Muskegon, or at least a sizeable number of those likely to be placed in a police lineup,[4] it would be surprising if careful police work would not reveal some coincidental common denominator in the background of almost any two men in a group as small as 584 all residing in the same relatively small town, *e.g.*, school attended, part-time employment, sports activities, girls dated.

---

[4] See Note, Title VII—Racial Discrimination in Employment—Employer's Use of Record of Arrests Not Leading to Conviction, 17 Wayne L Rev 228, 235 (1971).

## III.

But it is argued that this case is different. Here the evidence shows that Salis and Bailey were chums, friends; more than mere coincidence was shown. What then is the relevance of the fact that they were chums or friends? Why is that of greater probative value than would be the happenstance that they both had the same birthdays, went to the same high school, or dated the same girl?

It is, indeed, true, as the majority write, that it is more likely that a person will enter into an agreement or concert of action with an acquaintance or friend than with a complete stranger. Nevertheless, it would be unsound to resolve against Bailey a reasonable doubt otherwise held as to the accuracy or credibility of the victim's identification testimony based on the fact that he was friendly with Salis who had also been identified. To do so would be circular reasoning:

(1) From the sole fact that A and B are friends, a trier of fact could not properly infer that they had ever entered into an agreement, let alone a particular agreement, or an illegal one.

(2) From the facts that (i) the victim of a crime claims that two felons committed it and (ii) the victim identifies A as one of the felons and (iii) B is a friend of A, the trier could not properly, on that alone, infer that B was the other felon.

(3) Add that the victim also identifies B as one of the two felons: (i) If the trier of fact entertains a reasonable doubt as to the accuracy or credibility of the victim's identification of B as one of the felons, then the only other "evidence" against B is the fact that he is a friend of A, but as shown in (2) above, their friendship is not sufficient evidence to convict.

(ii) It would, therefore, be circular as well as illogical to resolve against B a reasonable doubt otherwise held concerning the accuracy or credibility of testimony identifying him as the second felon because B and A are friends, to dissolve, on that account, *post hoc ergo propter hoc*, a reasonable doubt.

For the purpose of deciding the issue raised on this appeal, the testimony identifying both Salis and Bailey cannot be regarded as evidence tending to establish that Salis and Bailey entered into an agreement to commit the crime of which Bailey was convicted.[5]  To hold otherwise would be to beg the question and would, again, be circular.  *In deciding this case we should proceed on the hypothesis that, but for the objected-to testimony showing that Salis and Bailey were friends, the jurors would have entertained a reasonable doubt as to the accuracy or credibility of the identification testimony and acquitted Bailey.*

Excluding from consideration the possibility that Salis and Bailey entered into an agreement to commit the crime—and we must exclude that possibility from consideration, there being no evidence whatsoever that they entered into such an agreement— the fact that they were friends is just another coincidental common denominator.  It was without probative value.

The fact that Salis was a friend of Bailey had no rational or logical connection to any other evidence offered by the people pointing towards Bailey's

---

[5] The people did not charge or attempt to prove conspiracy or that Salis and Bailey had entered into an agreement to commit the charged offense.  Surely, the jury would not have been permitted to speculate on the possibility that A (Salis) and B (Bailey) had entered into an illegal agreement based solely on the evidence that they were friends.  But that is precisely the tendency of the objected-to testimony.

guilt.   The fact of their friendship was not part of
a composite of circumstantial proofs[6] from which
Bailey's guilt could have been reasonably inferred.
The fact that Salis was Bailey's friend was left
suspended before the jury unrelated to any comple-
mentary evidence.   It served but one purpose, to
create the impression that Bailey was guilty because
he was a friend of another person who was also
identified as one of the assailants.

A reasonable doubt as to the accuracy or credi-
bility of identification testimony should not be re-
solved against a defendant because he is a friend or
associate of a felon.   Where the disputed issue is
identification, the fact of association should not be
provable by itself, because by itself it means noth-
ing.[7]   To allow the people to introduce such proof
where identification is the disputed issue would
introduce a dangerous and pernicious doctrine prej-
udicial not only to the defendant Bailey but to all
who value and would freely exercise the right of
association.[8]

---

[6] As in People v. Tucker (1969), 19 Mich App 320, cited by the
majority.   Noteworthy is the fact that in Tucker, in contrast with
this case of Bailey, there was no identification testimony.  The people's
entire case was circumstantial.   There is no risk in that kind of
case, as there is in a case where the people's case does depend
entirely on identification testimony, that the jury may be misled by
an extraneous piece of circumstantial evidence from careful appraise-
ment of the only real evidence against the defendant.   But see fn 7.

[7] The people may, of course, bolster identification testimony with
other evidence which, without regard to the identification, tends to
prove that the defendant committed the crime; for example, evidence
that the defendant was seen near the scene or with another person
identified as a participant shortly before or after the crime was com-
mitted, or evidence incriminating the defendant left at the scene or
found in his possession.

[8] I do not mean to be understood as saying that association is
never provable.   Where the fact of association is germane and is
interconnected with other proofs which together constitute sufficient
evidence of guilt, it may be proven as in People v. Keller (1933),
261 Mich 367, where the question was whether the defendant was an
accessory after the fact in harboring a murderer and the people were
allowed to prove the defendant's intimacy with the murderer before

I would hold, on the bases of both logic and principle, that the testimony that A (Salis) and B (Bailey) were friends was without probative value.[9]

## IV.

I further note that an impermissible and objectionable innuendo emanated from the detective's testimony. His testimony that he was in charge of investigating serious crime and that he had come to know Bailey and Salis before the robbery was committed and had seen them on a number of occasions tended to show that Bailey was under police scrutiny and surveillance; that Bailey, who did not testify, had or was suspected of committing other crimes.

"Evidence that tends to show that the accused person has committed other acts or crimes or has a disposition toward conduct similar to the offense charged is ordinarily inadmissible to prove the commission of the charged offense. This rule of law guards against convicting an accused person because he is a bad man. Barring such evidence prevents the trier of fact from inferring that the accused person is guilty of the charged offense because he has committed other similar acts or crimes." *People* v. *Matthews* (1969), 17 Mich App 48, 51, 52.

---

he committed that crime as bearing on her *knowledge* that he had committed the crime and the probability that she would harbor and assist him to escape conviction. The issue in *Keller* was whether the defendant had aided the murderer. In the present case, Bailey's guilt or innocence was not dependent on Salis' complicity or the existence of any relationship between Bailey and Salis. Here, the people made no effort to prove an agreement or conspiracy between Bailey and Salis to commit the crime of which Bailey was convicted.

[9] Since, in my opinion, the fact of Salis' and Bailey's friendship was without probative value, I do not reach the question of whether that evidence should be excluded because, although of probative value, its admission could confuse, mislead or prejudice the jury. See *People* v. *Hall* (1969), 19 Mich App 95, 103, *et seq.* (Levin, P. J., *dissenting*).

The people may not inject, by subtle innuendo, evidence otherwise inadmissible. *People* v. *DiPaolo* (1962), 366 Mich 394, 397; *People* v. *Jones* (1940), 293 Mich 409, 413.