PEOPLE *v.* SULLIVAN.

SAME *v.* SAWAYA.

1. Criminal Law—Evidence—Question for Jury.
   Where there is sufficient proof to carry a case to the jury and justify its conviction of one accused of crime, the trial judge should not direct a verdict for defendant.

2. Same—Identity—Circumstantial Evidence.
   In a criminal case, identity may be established by circumstantial evidence alone.

3. Robbery—Identity—Evidence.
   Positive testimony identifying accused. as masked bandits who perpetrated armed robbery of theater was sufficient to take case to jury.

4. Criminal Law—Credibility of Witnesses—Alibi.
   Credibility of witnesses in support of defendants' claim of alibi and that armed robbery of theater was an "inside job," being for the jury, Supreme Court will not interfere with its decision seemingly rejecting testimony given.

5. Same—Evidence—Voice.
   Evidence of sound of voice is a competent means of identification of one accused of crime.

6. Same—Armed Robbery by Masked Men—Identity of Voices—Cross-Examination.
   In prosecution of two men for armed robbery perpetrated with masks, where one witness had testified he was struck with the similarity between the voice of the smaller bandit in the theater and that of one of the defendants when he was in the police station for preliminary identification because of low undertone used, exclusion of testimony of another witness on cross-examination whereby such defendant sought to show that a low undertone is not so unique a quality of the human voice as to establish identity beyond question *held*, not reversible error in view of the testimony of other witnesses.

7. WITNESSES—CROSS-EXAMINATION—WEIGHT OF TESTIMONY.

In a criminal case, questions on cross-examination affecting the weight of a witness' story should not be abridged.

8. CRIMINAL LAW—PROPER FOUNDATION FOR ADMISSION OF EVIDENCE.

Evidence, of whatever nature, must be excluded until a proper foundation has been laid for its admission.

9. SAME—EVIDENCE—DOCUMENTS—IDENTIFICATION.

A document, unless self-authenticating, must first be properly identified by a witness, and the same is true of demonstrative or real evidence.

10. SAME — IDENTITY OF MASKED BANDITS — GLASSES — FAILURE TO MAKE FOUNDATION FOR ADMISSION OF IDENTIFYING TESTIMONY.

In prosecution of two defendants for armed robbery of a theater, where there was testimony that neither of the masked bandits wore glasses, rejection of proffered testimony of one defendant's mother that he always wore glasses and could not see without them and that the ones which he sought to have the jury examine were the same which had been purchased from a doctor months prior to the holdup and worn by her son ever since *held*, proper in absence of testimony by wearer himself or other competent witness identifying them as the ones regularly worn by him at the time of the robbery, and mother who did not see her son during the month when the robbery was committed was not a competent witness and comparison desired called for testimony of an expert who had made a thorough examination with mechanical aids.

11. SAME—EVIDENCE—REMOTE INFERENCES — SAVING QUESTION FOR REVIEW—INSTRUCTION.

After testimony of mother of one of two men accused of armed robbery that her son always wore glasses, fact that policeman testified he was wearing none while in the police station at a certain later date *held*, not reversible error where trial judge instructed jury to disregard the statement, no objection was raised to it in the court below, testimony was stricken because it was not shown defendant was in custody voluntarily without glasses, and inference that the testimony contained a clear suggestion of incarceration on another charge was too remote.

12. SAME—COMMENT OF PROSECUTOR—CHARACTER—PRESUMPTIONS— DEFENDANTS' FAILURE TO TAKE STAND.

Comment of prosecuting attorney that one of the State's witnesses was a man of unquestioned good character *held*, not reversible error as being tantamount to implication that defend-

ants admitted their guilt by failure to take the witness stand in their own behalf since the character of a witness is presumed to be good and there is no objection in so stating where that character has not been questioned in fact, especially where trial judge charged that defendants could properly refrain from testifying, that no unfavorable inferences could be drawn from such action, that defendants' good character was presumed by law and it was not incumbent upon them to present any proof of their good character.

13. SAME—PROSECUTOR'S REMARKS—UNDISPUTED EVIDENCE.
   In the trial of a criminal case the prosecuting attorney may properly call attention to the "undisputed" or "uncontradicted" character of certain evidence.

14. SAME—ARMED ROBBERY—FINGER PRINTS—GLOVES—REQUESTS TO CHARGE IMPERTINENT TO ISSUES.
   In prosecution for armed robbery of a theater where no proof was presented that there were finger prints on the safe from which the money was taken nor that the bandits wore or did not wear gloves, defendants' requests to charge on question of fingerprints and wearing of gloves, being impertinent to the issues presented, were correctly refused.

Appeal from Monroe; Golden (Clayton C.), J. Submitted June 15, 1939. (Docket Nos. 117, 118, Calendar Nos. 40,305, 40,306.) Decided September 6, 1939.

John Lawrence Sullivan and Samuel Sawaya were convicted of robbery while armed. Cases tried together. Affirmed.

*Fitzgerald & Walker,* for appellants.

*Thomas Read,* Attorney General, and *Francis T. Ready,* Special Prosecuting Attorney, for the people.

BUTZEL, C. J. Separate complaints were made against each of the defendants. The cases were tried together, but with the understanding that they were

distinct. The record is sent here on two appeals which are again heard together. The charge against both defendant Samuel (Sammy) Sawaya and defendant John Lawrence Sullivan is robbery while armed.

On December 6, 1937, between 8 and 9 o'clock in the morning, the Family theater in Monroe was held up by two masked bandits. From the foyer of the theater there are two stairways on opposite sides leading to the second or mezzanine floor and the balcony of the theater. At the head of one of the stairways is located the office of the management. As various persons entered the theater to transact business on the second floor, they were met by the bandits who displayed revolvers and forced each person in turn to go to the mezzanine and lie face downward on the floor. The bandits then proceeded to tie their hands and tape their legs. Five people were systematically disposed of in this way. Mr. Denniston, the manager of the theater, was given a similar reception but only after the bandits had led him into his office at the point of a gun and forced him to open the safe. After it had been opened, the bandits demanded a black bag which was used for carrying the receipts of the theater to the bank, and which was hanging near the safe just inside the coat closet. The money from the safe, $1,607, was transferred to the bag, and Denniston was tied up and forced to lie beside the others. Then the bandits disappeared into the street. As they left the theater one was still masked. They were carrying the black bag between them.

Defendants were subsequently apprehended and identified in the police departments of Detroit and Toledo, Ohio. At the trial they denied all connection with the crime. Necessarily, the principal question involved their identification as the bandits who

committed the robbery. Appellants claim that there is a total want of evidence to establish such a connection and argue that a verdict should have been directed in their favor. The record does not disclose such a lack of proof as to evoke application of the rule of *People* v. *Minney*, 155 Mich. 534, where a verdict was directed for defendant in a criminal case. The witness Brooks, an employee of an insurance company, testified that he passed by the Family theater at about 8:10 a. m. on the morning in question and that he was absolutely positive that he saw defendant Sullivan standing in front of the theater. He paid particular attention to Sullivan, he said, both because he looked like a stranger in the city and because he was standing in a peculiar manner with his face toward the wall, one hand on his hat pulled down over his face, and one hand in his right pocket. Witness Frank, a contractor, was positive that Sullivan was the taller of two men he had seen coming out of the theater about a quarter to nine that morning in the company of a masked companion. The description of the taller bandit by Mr. Denniston and witness Carley, both of whom were tied up in the theater, accords with the physical characteristics of defendant Sullivan as to height, build, and manner of walking. In regard to defendant Sawaya, he was positively identified by the janitor of the theater, Mr. Sheldon, as the shorter of the two bandits who participated in the holdup. The witness said he observed Sawaya's features when the handkerchief he was wearing as a mask momentarily slipped from his nose. His identification was confirmed by Miss Barr, the secretary of Mr. Denniston.

Identity, which may be established by circumstantial evidence alone, *People* v. *Stewart*, 163 Mich. 1, was here shown by positive testimony. There was sufficient proof to carry the case to the jury for trial

of the issue of fact.  See *People* v. *Lowrey,* 217 Mich. 431.  Appellants point out various factors tending to show that the robbery was an "inside job," such as the bandits' apparent knowledge of the identity of the manager, Mr. Denniston, and their familiarity with the premises and the black bag used to carry deposits to the bank.  This evidence was properly presented to the jury who, apparently, were unconvinced by it.  The same is true of defendants' alibi witnesses, one 18 and the other 16 years old, residents of Parkersburg, West Virginia, who claimed to have seen both defendants and five other persons every single day from the 25th of November to the 14th of December, 1937, in Parkersburg.  The credibility of their testimony was seemingly rejected by the jury.  With that decision this court cannot interfere.

Witness Denniston testified that he was struck with the similarity between the voice of the smaller bandit in the theater and with that of defendant Sawaya when he saw him at the police station where preliminary identification was made.  He said Sawaya spoke in a very low undertone just as at the theater.  On cross-examination another witness, Carley, was asked whether he had at any time since he was tied up in the theater been able to recognize any voice similar to Sawaya's.  "Undoubtedly voice is a competent means of identification," *State* v. *Karas,* 43 Utah, 506 (136 Pac. 788), and it was proper for the witness to indicate points of similarity in the two voices.  It was also proper cross-examination to show that a low undertone is not so unique a quality of the human voice as to establish beyond question the identity of Sawaya as the shorter bandit.  Particularly in a criminal case, questions on cross-examination affecting the weight of a witness' story should not be unduly abridged.  However, in view of

the testimony of the other witnesses establishing Sawaya's identity, we believe this was harmless error and did not affect the result.

There was testimony that neither of the bandits in the theater wore glasses. Defendant Sullivan sought to introduce testimony of his mother to the effect that he always wore glasses and could not see without them. Defendants' counsel also sought to have the jury examine the glasses which Sullivan was wearing in the courtroom and to have Mrs. Sullivan testify that they were the same glasses which had been purchased from a Detroit doctor in April, 1937, and regularly worn by her son thereafter. These offers were refused by the trial court and the rulings are assigned as error.

While no decision involving the introduction of glasses in evidence has come to our attention, the applicable principles are clearly established. Evidence, of whatever nature, must be excluded until a proper foundation has been laid for its admission. A document, unless self-authenticating, must first be properly identified by a witness. *Reed* v. *David Stott Flour Mills,* 216 Mich. 616. The same is true of demonstrative or real evidence. Before the glasses worn by Sullivan in the courtroom could be admitted as the glasses regularly worn by him at the time of the robbery, it would be necessary to have either testimony from the wearer himself or from some other witness competent and qualified to establish the fact. A lay witness, such as Mrs. Sullivan, could testify to the purely objective fact that her son wore glasses and that they were the first thing he put on in the morning. She could state that the size and shape of the frames and the lenses appeared to be the same or similar to those worn by Sullivan in the past. But she obviously could not establish that he was wearing glasses at the time of the robbery when

she stated that she did not see her son during the month of December, 1937. She likewise could not testify that the lenses he was wearing in the court-room were the same lenses he regularly wore, or were the ones purchased in Detroit in April, 1937. The witness did not state that she had looked through both sets of lenses and knew them to be identical. It is doubtful whether even this would be competent in normal cases since the differences in lenses are generally too subtle for an untrained observer to determine. A comparison, such as was desired here, called for the testimony of one with expert training who had made thorough examination with mechanical aids. The glasses worn by Sullivan could not be inspected by the jury until they were properly identified and admitted into evidence. That proof was never supplied and the rulings of the trial court were proper.

To refute the statement of Mrs. Sullivan that her son always wore glasses, the people produced a Detroit police officer who undertook to testify that Sullivan was not wearing glasses when he saw him at police headquarters on December 28 and 29, 1937. Defendants claim that this testimony contains a clear suggestion that they had been incarcerated on another charge and is in itself ground for a new trial. In the first place, we think the suggested inference is entirely too remote and without reasonable basis. In the second place, the objection was not raised in the court below. Finally, the testimony of the police officer was stricken because it had not been shown that Sullivan was voluntarily without his glasses while in police custody. The trial judge instructed the jury to disregard the statement. No reversible error is disclosed.

Appellants claim that the prosecutor in the course of his remarks referred to them as "two felons."

The judge stated that he did not remember that such a statement was made and there is nothing in the record to support defendants' allegation that it was made. The court further observed that if made he did not think it would justify declaring a mistrial. Thereupon defendants' counsel stated that the specific objection he was raising was that the prosecutor had argued that the defense had failed to refute the evidence offered by the prosecution, which implied that defendants had failed to take the witness stand in their own behalf. This claim is apparently founded upon the comment of the prosecutor that one of the State's witnesses was a man of "unquestioned good character." The character of a witness is presumed to be good, and there is nothing objectionable in so stating where that character has not been questioned in fact. To find such a statement tantamount to a declaration that defendants admit their guilt by a failure to testify is tenuous in the extreme. The right of a prosecutor to call attention to the "undisputed" or "uncontradicted" character of certain evidence has long been recognized. *People* v. *Hammond,* 132 Mich. 422; *People* v. *Lowrey, supra.* Furthermore, the trial judge in his charge stressed to the jury that defendants could properly refrain from testifying and that no unfavorable inference could be drawn from this action, and that their good character was presumed by law, and it was not incumbent upon them to present any proof of their good character. Their rights were fully protected.

Appellants argue that the prosecution did not adduce evidence of finger prints on the safe and thus identify the bandits in this manner. There is no proof whatever that there were finger prints left on the safe. It was shown that the safe was opened by Mr. Denniston and not by the bandits, and the record

does not contain any proof that the bandits touched the safe except when they took the money from the compartment in the interior. There was no evidence that the bandits wore gloves or did not wear them. Remarks by counsel on this point were indicated by the trial judge to be improper and the jury was told to disregard comments which went beyond the limits of the evidence. Being impertinent to the issues as presented, defendants' request for a charge on the question of finger prints and the wearing of gloves to prevent them was correctly refused.

We have examined the other claims made by appellants' counsel but we find no prejudicial error.

The judgment of conviction is affirmed.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.