PEOPLE v. CLARK.

1. CONSPIRACY—OBSTRUCTING JUSTICE—REQUEST TO CHARGE—INSTRUCTIONS.

In prosecution of appellant and other defendant police officers and others, not policemen, for conspiracy to obstruct justice, wherein court did not give appellant's request to charge that jury must find he had an official duty to enforce the law against handbooks in order to find him guilty, did not commit error thereby especially where instruction was given that appellant, chief inspector of police, had a duty to enforce the laws and rules of the police department as prescribed by the police manual; it appearing in evidence that the manual specifically charged such officer with providing uniformity of

enforcement procedure and that the delegation of certain duties to a particular division of the department did not relieve members thereof from taking proper police action in connection with law violations observed by them or coming to their notice.

2. SAME—OBSTRUCTING JUSTICE—EVIDENCE—BURDEN OF PROOF— POLICE INSPECTOR.

On trial of conspiracy to obstruct justice it was not error to charge that jury must find that appellant, an inspector of police, had received money from a named coconspirator where jury was instructed as to claims of the people, cautioned as to testimony by coconspirators, that appellant must have received the payments as a part of the conspiracy and that the people had the burden of overcoming presumption that appellant had performed his duty as a public officer.

3. SAME—CREDIBILITY OF COCONSPIRATOR—QUESTION FOR JURY.

The credibility to be accorded the testimony of a coconspirator is for the jury in a prosecution for criminal conspiracy.

4. SAME—HEARSAY—RES GESTAE.

In prosecution for conspiracy to obstruct justice, the admission of testimony by a handbook operator that person to whom he paid the bribe stated that a portion thereof was to go to appellant, chief police inspector, was properly admitted as to defendants then shown to have been parties to the conspiracy and to others if and when, and only if and when, shown to be parties to the conspiracy, as the testimony was a part of the *res gestae*.

5. CRIMINAL LAW—COMMENT AS TO UNCONTRADICTED TESTIMONY— FAILURE TO TAKE WITNESS STAND.

When testimony is given alleging crime and there is no contradiction, the jury may consider such fact as long as there is no comment made by the judge or prosecutor on the failure of the defendant to take the witness stand.

6. APPEAL AND ERROR—INSTRUCTIONS.

Wresting sentences from the context or printing a few words of a sentence in capitals does not show error on appeal, when the entire charge or the sentence itself is a fair presentation of the facts and the law of the case.

7. CRIMINAL LAW—CONSPIRACY—OBSTRUCTING JUSTICE—DIRECTED VERDICT—EVIDENCE.

In prosecution for conspiracy to obstruct justice, record *held*, to justify refusal to direct a verdict for appellant, a chief inspector of police, and to sustain verdict of guilty.

8. Same—Conspiracy—Obstructing Justice—Instructions.
  Charge to jury in prosecution for conspiracy to obstruct justice
    *held*, a fair presentation of question to jury, not argumenta-
    tive and highly prejudicial, and not to have deprived appel-
    lant of a fair and impartial trial.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted October 11, 1945. (Docket No. 74, Calendar No. 42,285.) Decided December 3, 1945. Rehearing denied January 7, 1946.

Fred R. Clark was convicted of conspiracy to obstruct justice. Affirmed.

*Toy & Newman,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

Butzel, J. Appellant Fred R. Clark was found guilty of conspiracy to obstruct justice. The pleadings and such facts, as far as applicable to appellant Clark, are set forth in the opinions in the companion cases of *People* v. *Heidt, ante,* 629, and *People* v. *Bartlett, ante,* 648. The three appeals were all submitted on one record. Separate appeals were taken and briefs filed and cases argued by the attorneys representing the respective appellants. We refer to the opinions in the two companion cases for the discussion and decision of such claims of error as are also presented in the brief filed by appellant Clark. We find it unnecessary to reiterate what was said both as to the facts and the law in these two opinions as far as they govern the same questions that are raised in the instant appeal. In order to avoid duplication, we shall limit ourselves solely to discussion of the questions of

law and the few additional facts we believe are pertinent to the appeal of appellant Clark that have not been discussed and decided in the opinions in *People* v. *Heidt* and *People* v. *Bartlett.*

Appellant claims error because of the refusal of the trial judge to charge that unless the jury was satisfied beyond a reasonable doubt and to a moral certainty that defendant Fred R. Clark had an official duty to enforce the law against handbooks, the jury must find him not guilty. Gambling and other forms of commercial vice had become rampant in the city of Detroit. This was especially true in regard to handbooks. The second count of the information and the one relied upon in the instant case charges all of the defendants of being guilty of conspiracy to obstruct justice by permitting operators of handbooks to do business on a large scale in the city of Detroit and the county of Wayne. The business emanated from a copartnership known as the Consolidated News Service, which gathered the betting odds and other news in regard to horse racing from various large tracks throughout the country and telephoned them to the operators of the many handbooks that were being conducted throughout the city of Detroit and the county of Wayne. The Consolidated News Service leased a special wire from the telephone company and used it to broadcast the information in regard to races and betting to the various handbooks. During the period from January 2, 1935, to August 1, 1940, this telephone service was installed by the telephone company for the Consolidated News Service at 458 addresses in Detroit and the surrounding territory. The addresses, however, changed from time to time as some handbooks were either closed or moved from one place to another. One collector for the Consolidated News Service collected from

140 handbooks; another one was collecting from the east side of Detroit. The operating of these handbooks was due largely to the failure of the police to suppress them. This was brought about by bribing public officials and members of the police force, including some of the men higher up in the department. The operators of the handbooks paid bribe money to collectors for distribution to police officers. Some of it was distributed by Raymond W. Boettcher, an inspector of police. Appellant Clark had risen from the ranks, became an inspector and finally chief inspector on January 1, 1938. Boettcher testified that he paid Clark $600 a month from the time Clark became chief inspector on January 1, 1938, until August, 1939, at Clark's office on the third floor of police headquarters. This was not directly denied by Clark or anyone else.

There was introduced into evidence the Detroit Police Manual and the general orders set forth by the superintendent and commissioner of police. With reference to the duties of the chief inspector, a general order stated:

"He is charged with the proper and efficient enforcement of all laws, ordinances and regulations in precincts and divisions and will, insofar as conditions permit, assure a uniformity of enforcement procedure as will maintain efficiency and coordination of activity."

It also provided that:

"The delegation of the enforcement of certain laws and ordinances to particular divisions of the department does not relieve members of their divisions from taking proper police action in connection with violations of such laws or ordinances observed by them or coming to their notice."

Another general order sets forth the duties of the assistant deputy superintendent as follows:

"He will give special attention to gambling and vice conditions and to duties pertaining to the enforcement of the liquor laws, and will be charged with the responsibility of police activity relating thereto."

There was testimony that complaints were made from time to time in regard to handbooks and they were sent to Heidt, assistant deputy superintendent. Some of them also reached the attention of the superintendent, Fred W. Frahm, named in the original indictment as a coconspirator. There was also testimony to show that Frahm discouraged police raids on the handbooks. When possible the former vigorous efforts for suppression and prosecution were to a large degree abandoned. The handbooks continued to flourish. Some of them were downtown not far from the central police headquarters in the city of Detroit. There is no testimony, however, to show that appellant Clark at any time was directed not to do his duty which was prescribed by the police manual and the general orders, even though many complaints were directed for attention to the assistant superintendent of police. The orders in regard to the chief inspector's duties were never revoked, but remained in full force and effect.

Appellant Clark did not take the witness stand, nor was he obliged to. Instead of giving the instruction asked for by appellant's counsel, the judge charged as follows:

"During the time that these payments were being made to these various police and public officials it is the claim of the people that assistant deputy superintendent William Heidt was specifically charged with the duty of giving special attention to gambling and vice conditions and was charged with the responsibility of police activities relating thereto; that Fred Clark was charged with the duty of enforcing all laws in the city of Detroit and had

charge of the district inspectors and precinct inspectors; that the various precinct inspectors who are named as defendants, were responsible for preservation of the public peace and the enforcement of all laws and ordinances within their precincts, and all police officials and policemen, regardless of rank, who are defendants herein, were charged with the duty of enforcing the law, pertaining to gambling. * * *

"I charge you and call to your attention particularly the rank and position held by each of such defendants during the alleged period of the conspiracy. The authority and responsibility of each, according to their respective positions and ranks in the department, have already been called to your attention, both through the evidence and the law previously explained to you. From these sources, members of the jury, you have been advised concerning the authority of these defendants to enforce the law. I charge you further that with the authority thus given to these defendants, there also arose responsibility, and with such authority and responsibility there further followed an official duty to enforce the law. The scope of this duty is measured by the scope of their authority. * * *

"I have also read to you from the Detroit police manual, sections thereof which were received in evidence, wherein specific duties of the police officer defendants are explained and defined with particular reference to the position and rank of such defendants in the police department during the period covered by the information, namely, between January 2, 1935, and August 1, 1940. These principles of law and rules of the police department have been given and explained to you in order that you may have a clear and better understanding of the law and rules which relate to the duty of such police officer defendants in this case. * * *

"It is the duty of a police officer to respect and enforce such existing laws against gambling according to the law and the rules of the police department

as prescribed thereto, with the same honesty, diligence and vigor that he is called upon to enforce other laws.''

There was no error in refusing to give the charge asked for by appellant Clark's attorney and giving the charge hereinbefore quoted. Further, since there is no dispute in the testimony which unquestionably shows that in part the official duty of Clark was to enforce the law against handbooks, the trial court might well have charged the jury that such was Clark's duty as a matter of law, and therefore failure to give appellant's requested charge was not error.

Appellant claims further error because the court refused to give appellant's request to charge that unless the jury were satisfied beyond a reasonable doubt and to a moral certainty that Clark received money from Boettcher, they must find him not guilty; also that the court erred in refusing to direct a verdict of not guilty at the close of the people's case and at the conclusion of proofs. The court very carefully stated to the jury the claims made by the people. He cautioned the jury to analyze and consider them carefully and to decide to what extent they were sustained by the evidence submitted. He very emphatically stated that the defendants were not on trial on a charge of neglect of duty; that it was for the jury to decide whether the defendants received payoff moneys and, if so, whether the payments were received by them under such circumstances and with such understanding and with such implied consideration as would justify the conclusion by the jury that there was a direct connection between such payoffs and the purpose and design of the conspiracy. He also charged them in stronger language than appellant Clark's attorney asked as follows:

"The jury * * * must find that said money was paid to said police officers with the knowledge that said police officers knew of the existence of the alleged conspiracy and permitted said handbooks to operate; * * * that the mere payment of money standing alone is insufficient to convict, and further that the payment, or receipt of money on a promise not to illegally tip over and smash in handbooks would be insufficient to convict."

He further stated to the jury that public officials were presumed to act in the exercise of their powers in the interests of the public and with the authority granted them, that if the jury was not to assume that public officials would not dishonestly or dishonorably use their public office for private gain, in the absence of evidence convincing proofs overcoming such presumptions; that if this charged that a police officer without proof to the contrary is presumed to have done his duty as such officer and the burden was upon the people to prove beyond a reasonable doubt that such officer had not performed his duty as required by the laws of the State of Michigan.

We believe that the charge was sufficient to fully instruct the jury that it had to be satisfied beyond a reasonable doubt and to a moral certainty as to the alleged payment received by appellant, Clark from Boettcher. The credibility of Boettcher's testimony was for the jury to decide. *People v. Ryan*, 307 Mich. 610. The judge further charged that the testimony of one who claims to be an accomplice is liable to grave suspicion and should be considered with great caution, and only when the jury is satisfied all of the circumstances in the case; that the jury should subject such testimony to careful examination and consider the influence under which the testimony is given and whether the purpose of the witness is to

shield himself from punishment or to gratify his malice.

There was testimony that Boettcher had received large sums of money partly for distribution among the high police officials, and that he was threatened with an investigation for evasion of his income tax. Appellant claims that Boettcher by falsely implicating Clark and other defendants devised a scheme to explain the expenditures of moneys he received. This is a deduction by appellant's counsel, but, at most, it is a question of fact for the jury to decide. Boettcher swore he made the payments to appellant Clark. Boettcher testified that he had no conversation with Clark when he paid him from month to month. It was not a subject that necessarily requires any conversation and it might have been concluded that the less said the better as long as the money was delivered. It must be borne in mind that Boettcher was an inspector of police and Clark was chief inspector. One handbook operator testified that he contributed to a fund of $2,000 a month to keep certain handbooks open; that this was paid each month to John Curro, handbook operator and joint defendant in this case; that Curro stated that $300 was to go to Clark. Objection was made to the admission of this testimony as hearsay. The judge properly held that this testimony was only binding upon such defendants as the testimony up to that time showed were parties to the conspiracy and to others if, when, and only if and when, by competent evidence they were shown to be parties to the conspiracy. Curro was a defendant in the case. The testimony was part of the *res gestae*. It was properly admitted as limited by the trial judge. In any event the payment and distribution of bribe moneys were questions for the jury. Neither appellant Clark nor anyone else testified that Clark did not re-

ceive the bribe money. The judge instructed the jury that the failure to take the witness stand could not operate against defendant. It is not claimed that the prosecution commented upon his failure to take the witness stand. We have frequently held that when testimony is given alleging crime and there is no contradiction, the jury may consider this fact as long as no comment is made by the judge or prosecutor on the failure of defendant to take the witness stand. *People* v. *Sullivan,* 290 Mich. 414; *People* v. *Parker,* 307 Mich. 372.

Other alleged errors in the charge, as claimed by appellant, we do not believe have sufficient merit to require discussion. Wresting sentences from the context or printing a few words of a sentence in capitals does not show error, when the entire charge or the sentence itself is a fair presentation of the facts and law of the case. A careful study of the record convinces us the court did not err in refusing to direct a verdict for defendant Clark, nor do we believe that the charge of the court was argumentative and highly prejudicial, thereby depriving defendant of a fair and impartial trial.

All other questions having any merit have been discussed in the companion cases heretofore mentioned. We believe a jury question was fairly presented under a fair charge to the jury, and the jury's verdict is sustained by the evidence.

The conviction is affirmed.

STARR, C. J., and NORTH, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.