*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

YORK MACK,

       Defendant-Appellant.

UNPUBLISHED
November 7, 2019

No. 344881
Wayne Circuit Court
LC No. 17-010137-01-FC

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

In the early morning hours of June 13, 2017, Keyon Cohen was gunned down in the street outside his home. Police arrested defendant, York Mack, as he had recently threatened to kill Cohen, a romantic rival. The prosecution charged defendant with first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The jury acquitted defendant of these charges and instead convicted him of the lesser included offense of second-degree murder, MCL 750.317. Defendant challenges the sufficiency of the evidence supporting his identification as the perpetrator, contends that the prosecutor improperly elicited testimony regarding his criminal history, and asserts that the court erred in instructing the jury on the lesser offense of second-degree murder. We affirm.

## I. BACKGROUND

At one point in time, SB was romantically involved with both Cohen and defendant. SB became frightened of defendant and she ended their relationship. Not to be dissuaded, defendant told SB's mother that he wanted to marry SB. And confirming SB's fears, defendant informed SB and her mother that he would kill any man that got between them. Unfortunately, defendant discovered SB's relationship with Cohen and made good on his threats.

At approximately 2:30 a.m. on the morning of June 13, 2017, a friend dropped Cohen off at home after work. A half hour later, neighbors heard a loud noise. One ran out and found Cohen laying the street. Cohen had been shot 12 times and died before the ambulance arrived. Officers found a trail of .233 caliber shell casings in the street.

-1-

## II. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence supporting his identification as Cohen's killer. We review such challenges de novo, "viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). All conflicts in the evidence are resolved in favor of the prosecution, and all circumstantial evidence and reasonable inferences drawn therefrom can establish satisfactory proof of the crime. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). Assessing the credibility of the witnesses is the sole province of the jury as it, and not the appellate court, has the opportunity to observe the witnesses first-hand. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998); *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Defendant complains that no forensic or eyewitness evidence connects him to the shooting. However, "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime," including identity. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010); *People v Sullivan*, 290 Mich 414, 418; 287 NW 567 (1939). Moreover, the prosecution was not required to establish that defendant personally held the gun and pulled the trigger. A defendant can be convicted of second-degree murder based on an aiding and abetting theory if the prosecution presents evidence that the defendant "performed acts or gave encouragement that assisted in the commission of the crime" and intended for the principal to commit the crime or had knowledge that the principal would commit the crime. *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999) (quotation marks and citation omitted).

The prosecutor in this case presented evidence establishing defendant's motive and placing him in the area at the time of the shooting. As noted, defendant advertised that he would kill any man that interfered with his relationship with SB. Defendant was on notice of Cohen's relationship with SB. There was testimony that defendant even visited the club where Cohen worked to learn more about him. Defendant knew where Cohen lived. The night before the shooting, defendant called SB and said, "I am on some shit tonight" and was "around big guns." Defendant claimed he was at the casino at the time of the shooting. However, defendant's cellular telephone location data placed him in the vicinity of the shooting, far from the named casinos, at that time. This evidence further established that defendant drove away from the area shortly after the shooting, creating the inference that he was fleeing the scene. The prosecution also presented a recorded jailhouse telephone call in which defendant denied killing Cohen, but admitted, "I had a role." Defendant claimed that he was present during the shooting, did not know his comrade intended to kill Cohen, and was unaware that his friend possessed a gun until the friend removed it from their vehicle's trunk.

This evidence was sufficient for the jury to infer that defendant at least aided and abetted in the killing of Cohen. Accordingly, defendant is not entitled to relief.

## III. PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecutor improperly elicited testimony from SB regarding defendant's criminal history. Specifically, defendant challenges the following questions posed by the prosecutor and answered by SB:

> *Q*. Now [defendant]. When did you meet [defendant]?
>
> *A*. A few weeks after he got out of jail in March I think, March. He got out in March.
>
> *Q*. Okay. And that's March 2017?
>
> *A*. Yes. Yeah.
>
>            \*   \*   \*
>
> *Q*. Okay. What did he do when he got to the party [for your son's birthday]?
>
> *A*. He hopped out . . ., gave my son some money, then got back in the car. And then hanging out the window talking about he just did 10 years and all this crazy stuff.

Defendant failed to preserve his challenge by raising a timely objection and our review is therefore limited to plain error that affected the outcome of the trial. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003); *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). In reviewing defendant's challenge, we must consider the testimony in its entirety to place the questions and responses in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010).

Defendant is correct that references to a defendant's prior incarceration are generally inadmissible. *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983). "It is well settled that evidence of a prior conviction may be prejudicial to the accused, the danger being that the jury will misuse prior conviction evidence by focusing on the defendant's general bad character . . . ." *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999) (quotation marks and citation omitted), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007).

It is clear on this record, however, that SB's responses to the prosecutor's questions were unresponsive and the prosecutor was not trying to elicit improper testimony. It was unnecessary for SB to refer to defendant's prison time in giving a date for her first meeting with defendant. It was also unnecessary for SB to describe defendant's reference to his prior incarceration during his uninvited appearance at her son's birthday party. "Unresponsive answers from witnesses are generally not prosecutorial error." *People v Jackson*, 313 Mich App 409, 427; 884 NW2d 297 (2015). "As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive

testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990).

In any event, SB's reference to defendant's prior incarceration did not likely affect the outcome of the trial. Defense counsel actually mentioned defendant's prior incarceration first in opening statement, indicating that defendant had only been out of prison for three months when Cohen was shot. During closing argument, defense counsel reiterated that defendant had only been out of jail a short period at the time of the shooting. "[A]n appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence." *People v Witherspoon (After Remand)*, 257 Mich App 329, 333; 670 NW2d 434 (2003). And SB's testimony did not provide surprise information to the jury. Accordingly, defendant is again not entitled to relief.

## IV. JURY INSTRUCTION

Finally, defendant challenges the trial court's decision to instruct the jury on the lesser included offense of second-degree murder over his objection. Specifically, defendant contends that the only disputed issue in this case was identity, not "the elements that differentiate" first-degree premeditated murder from second-degree murder. The prosecution requested the instruction because in the recorded jailhouse telephone call, defendant admitted to being present at the shooting, but claimed ignorance of his partner's plan, thus placing the element of intent in dispute.

We review de novo claims of instructional error, but review for an abuse of discretion the trial court's determination of whether a particular instruction is applicable given the facts of the case. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). "A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law." *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) (quotation marks and citation omitted). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza*, 468 Mich 527 (2003). "An inferior-offense instruction is appropriate only when a rational view of the evidence supports a conviction for the lesser offense." Mendoza, 468 Mich at 545.

"Second-degree murder is always a lesser included offense of first-degree murder. First-degree murder is second-degree (common-law) murder *plus* an element, *viz.*, either premeditation or the perpetration or attempt to perpetrate an enumerated felony. Conversely, second-degree murder is first-degree murder *minus* premeditation or the enumerated felony." *People v Carter*, 395 Mich 434, 437-438; 236 NW2d 500 (1975). Although defendant actively presented only one defense at trial—that he was not the perpetrator—defendant's own recorded words placed the element of intent in question. The prosecution wove a web of circumstantial

evidence tending to establish that defendant travelled to Cohen's home with a premeditated plan to kill Cohen. In a recorded conversation, however, defendant admitted to being outside Cohen's home, but denied any preknowledge that his friend planned to kill Cohen. On this record, the trial court properly determined that the intent element was in dispute and that the lesser included offense instruction was necessary.

We affirm.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher